# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 18-1518V
UNPUBLISHED

| | |
|---|---|
| SHARON BORRIS,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: May 25, 2021<br><br>Special Processing Unit (SPU); Dismissal; Onset; Prior Shoulder Pain; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Kevin A. Mack*, Law Office of Kevin A. Mack, Tiffin, OH, for Petitioner.

*Mollie Danielle Gorney*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION[1]

On October 2, 2018, Sharon Borris filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA") caused-in-fact by the influenza ("flu") vaccine she received on October 8, 2015. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons set forth below, I hereby DENY entitlement in this case. Petitioner has not established that her left shoulder injury meets the definition for a Table SIRVA, and cannot otherwise make a sufficient preponderant showing for non-Table vaccine causation.

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I. Procedural History

Within a month of filing her petition, Petitioner filed the medical records required under the Vaccine Act. Exhibits 1-7, ECF No. 6; Section 11(c). Several months later, she filed a letter dated October 12, 2018, from Susan A. Hollobaugh, PA-C, a physician's assistant who acted as her primary care provider ("PCP"), an affidavit which consists of her responses to a series of questions, and affidavits from her husband and several co-workers.[3]

During the initial status conference, held on December 18, 2018, the parties discussed the weaknesses in Petitioner's case. Scheduling Order, issued Feb. 15, 2019,[4] at 1-2, ECF No. 11. The medical records show Petitioner experienced left shoulder pain at least eleven months prior to vaccination. *Id.* at 1-2 (citing PCP medical records from December 2014, Exhibit 6 at 83). When treated for left shoulder pain post-vaccination, Petitioner described an onset which correlates with pain she experienced *prior* to the October 2015 vaccination. *Id.* at 2 (citing physical therapy ("PT") records from a visit on January 12, 2016, Exhibit 2 at 10). And Petitioner did not attribute her left shoulder pain to the vaccine she received until almost *30 months* post-vaccination, and only following a consultation with an attorney. *Id.* (referencing a February 12, 2018 neurology visit, Exhibit 7 at 1).

To address these issues, Petitioner filed a status report which included a second letter from her PCP, dated January 15, 2019, and labeled as Exhibit 6 at 177. ECF No. 10. She then filed a second, handwritten affidavit, executed on May 16, 2019, and a third letter from her PCP, dated June 27, 2019. Exhibit 12 at 1-4, June 12, 2019, ECF No. 18-1; Exhibit 6 at 178, July 16, 2019, ECF No. 23-1. In these documents, Petitioner and her PCP maintained that the shoulder injury the records document that Petitioner suffered in late 2014 and early 2015 differed from her injury allegedly attributable to her October 2015 vaccination. On November 26, 2019, Petitioner also filed affidavits from her PCP and herself indicating she received the vaccination alleged as causal intramuscularly. Exhibit 6 at 179, ECF No. 27-1; Exhibit 12 at 5, ECF No. 27-2.

---

[3] Petitioner labeled the October 12, 2018 letter from her PCP using the same exhibit number as the medical records from her PCP. ECF No. 9-1; *see* Exhibit 6 filed in four parts at ECF Nos. 6-6 through 6-9. However, there is no page number associated with this exhibit. As explained later in this section, second and third letters from Petitioner's PCP are labeled Exhibit 6 at 177 and Exhibit 6 at 178. Additionally, the last page number used in the medical records filed on October 11, 2018 at ECF No. 6-9 was page 160. Thus, I will refer to this first letter as Exhibit 6 at 176. The affidavits from Petitioner, her husband, and co-workers were correctly labeled as Exhibits 8-11. ECF Nos. 9-2 through 9-5.

[4] Due to a lapse in appropriations and partial government shutdown, the subsequent order was delayed until the government re-opened on January 28, 2019. *See* the December 26, 2018 and January 29, 2019 General Orders which can be found on the court's website, www.uscfc.uscourts.gov.

From early January through March 2020, the parties attempted unsuccessfully to informally resolve this case. ECF Nos. 31, 33-34. On April 23, 2020, Respondent filed his Rule 4(c) Report, setting forth his objections to compensation. ECF No. 35. As reflected in my May 2020 order, I noted that Petitioner's injury did not appear to meet the Table definition for SIRVA, and that there were significant weaknesses related to her causation-in-fact claim as well. ECF No. 36. Also, although Petitioner had offered a logical narrative to distinguish pre- and post-vaccination injuries, that narrative was not supported by the medical records in this case. *Id.* at 1-2. I stressed that if Petitioner wished to establish vaccine causation, she would need to provide an expert report to support her assertions. *Id.* at 2. In response, the parties agreed to engage in litigative risk settlement discussions for 30 days. *Id.* at 2-3. Approximately one month later, Petitioner filed a letter from her physical therapist, dated May 27, 2020, supporting her account of two distinct left shoulder injuries. Exhibit 13, ECF No. 37.

On June 5, 2020, the parties filed a joint status report indicating their settlement efforts had been unsuccessful. ECF No. 38. They instead requested that I set a deadline for Petitioner's expert report. *Id.* I indicated I would be issuing a ruling regarding the requirements for a Table SIRVA, and instructed Petitioner to pursue the expert report needed to support her causation-in-fact claim. Non-pdf Scheduling Order, issued June 24, 2020.

While awaiting this ruling, the parties reached a tentative settlement and requested that I issue a 15-Week Stipulation Order on August 10, 2020. However, seven days later, Respondent filed a status report indicating that he had declined to approve the tentatively agreed-upon settlement, and asked that I instead set a new deadline for Petitioner's expert report. ECF No. 40. During discussions by email correspondence, Petitioner's counsel later represented that Petitioner would not be filing an expert report, and preferred to rely upon the record as it currently stands. *See* Informal Remark, dated Sept. 22, 2020. I withdrew the 15-Week Stipulation Order on October 2, 2020. ECF No. 41.

The matter is now ripe for adjudication.

II. **Applicable Legal Standards**

Under Section 13(a)(1)(A) of the Act, a petitioner must demonstrate, by a preponderance of the evidence, that all requirements for a petition set forth in section 11(c)(1) have been satisfied. A petitioner may prevail on her claim if the vaccinee for whom she seeks compensation has "sustained, or endured the significant aggravation of any illness, disability, injury, or condition" set forth in the Vaccine Injury Table (the Table). Section 11(c)(1)(C)(i). The most recent version of the Table identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the

particular injuries must occur after vaccination. Section 14(a). The Table injury of SIRVA following receipt of an influenza vaccine was added in 2017.[5] If a petitioner establishes that the vaccinee has suffered a "Table Injury," causation is presumed.

If, however, the vaccinee suffered an injury that either is not listed in the Table or did not occur within the prescribed time frame, petitioner must prove that the administered vaccine caused injury to receive Program compensation on behalf of the vaccinee. Section 11(c)(1)(C)(ii) and (iii). In such circumstances, petitioner asserts a "non-Table or [an] off-Table" claim and to prevail, petitioner must prove her claim by preponderant evidence. Section 13(a)(1)(A). This standard is "one of . . . simple preponderance, or 'more probable than not' causation." *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1279-80 (Fed. Cir. 2005) (referencing *Hellebrand v. Sec'y of Health & Human Servs.*, 999 F.2d 1565, 1572-73 (Fed. Cir. 1993). The Federal Circuit has held that to establish an off-Table injury, petitioners must "prove . . . that the vaccine was not only a but-for cause of the injury but also a substantial factor in bringing about the injury." *Shyface v. Sec'y of Health & Human Servs.*, 165 F.3d 1344, 1351 (Fed. Cir 1999). *Id.* at 1352. The received vaccine, however, need not be the predominant cause of the injury. *Id.* at 1351.

---

[5] Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV) (2017). The criteria establishing a SIRVA under the accompanying *Qualification and Aids to Interpretation* ("QAI") are as follows:

> *Shoulder injury related to vaccine administration (SIRVA).* SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

The Federal Circuit has indicated that petitioners "must show 'a medical theory causally connecting the vaccination and the injury'" to establish that the vaccine was a substantial factor in bringing about the injury. *Shyface*, 165 F.3d at 1352-53 (quoting *Grant v. Sec'y of Health & Human Servs.*, 956 F.2d 1144, 1148 (Fed. Cir. 1992)). The Circuit Court added that "[t]here must be a 'logical sequence of cause and effect showing that the vaccination was the reason for the injury.'" *Id.* The Federal Circuit subsequently reiterated these requirements in its *Althen* decision. *See* 418 F.3d at 1278. *Althen* requires a petitioner

> to show by preponderant evidence that the vaccination brought about her injury by providing: (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury.

*Id.* All three prongs of *Althen* must be satisfied. *Id.*

Finding a petitioner is entitled to compensation must not be "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." Section 13(a)(1). Further, contemporaneous medical records are presumed to be accurate and complete in their recording of all relevant information as to petitioner's medical issues. *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). Testimony offered after the events in questions is considered less reliable than contemporaneous reports because the need for accurate explanation of symptoms is more immediate. *Cucuras*, 993 F.2d at 1528 (noting that "the Supreme Court counsels that oral testimony in conflict with contemporaneous documentary evidence deserves little weight"); *Reusser v. Sec'y of Health & Human Servs.*, 28 Fed. Cl. 516, 523 (1993); *Vergara v. Sec'y of Health & Human Servs.*, No. 08-882V, 2014 WL 2795491, at *4 (Fed. Cl. Spec. Mstr. July 17, 2014) ("Special Masters frequently accord more weight to contemporaneously-recorded medical symptoms than those recounted in later medical histories, affidavits, or trial testimony.").

### III. Analysis

In her second affidavit, Petitioner claims that she suffered two separate injuries: a left biceps injury which was treated in January 2015 and resolved in March 2015, and a shoulder injury caused by the flu vaccine she received in October 2015. Exhibit 12 at 1-2. To support her allegations, Petitioner relies upon the letters from her PCP and physical

5

therapist, and the affidavits from herself, her husband, and her co-workers. All, however, were dated or executed in October 2018 or later, after the Petition in this case was filed. Additionally, much of the information provided in these documents appears to be based upon Petitioner's current assertions, and they do not adequately address the contradictory evidence provided by the contemporaneously created medical records.

As discussed below, the medical records reveal that Petitioner's earlier pain, described intermittently as both left shoulder and left upper arm pain, had *not* resolved prior to vaccination as she now claims. Moreover, the pain she reported following vaccination was characterized in those same records as a continuation of her earlier condition, rather than associated with the October 2015 vaccination. Indeed, no distinction between the two allegedly separate injuries was made until early 2018 (around the time it appears Petitioner first began weighing whether to bring this claim).

### A. Records as It Currently Stands

#### 1. Medical Records

The medical records reveal that Petitioner's left shoulder pain was first addressed during a comprehensive medical exam (annual physical), conducted by her PCP on August 25, 2014. Under the "Review of Systems," it is noted that Petitioner "[wa]s positive for joint pain – (right knee and right foot, left shoulder)." Exhibit 6 at 74. She was referred to orthopedist Frank J. Myers, D.O. "for evaluation of *Shoulder* pain." *Id.* at 76 (emphasis added). In the medical record from her first orthopedic visit, on January 13, 2015, Petitioner's pain was described as "right upper arm pain." Exhibit 3 at 1 (all capital letters in the original). However, she was diagnosed with *"Shoulder* bursitis" and prescribed physical therapy ("PT"). *Id.* at 2 (emphasis added).[6]

When first seen by the physical therapist, on February 19, 2015, Petitioner described sharp pain in the left "upper arm, biceps/triceps area." Exhibit 2 at 3. However, this same record clearly shows that Petitioner was experiencing accompanying limitations in her shoulder range of motion ("ROM"). *Id.* at 3-4. The objective of the sessions attended by Petitioner was consistently described as improving her shoulder ROM. *Id.* at 5, 7-8. Additionally, other entries characterized Petitioner's pain as left shoulder pain with the quantifier that it is "mostly in [the] biceps region [and with] certain movement." *Id.* at 7.

When discharged from PT on March 13, 2015, after six PT sessions, Petitioner's pain had decreased from seven to five on a scale of ten. Exhibit 2 at 4-5, 8. She was

---

[6] At this January 13, 2015 visit, Petitioner also complained of right thigh and knee pain. Exhibit 3 at 1. For Petitioner's right knee pain, Dr. Myers proposed a cortisone injection. *Id.* at 2. Injections were administered in Petitioner's right knee by Dr. Myers on February 3 and 10, 2015. *Id.* at 4-7.

noted to have exhibited a fair response to PT, described as "slowly responding," and as having only partially met her PT goals. *Id.* at 2.

In the medical record from Petitioner's next annual physical on October 13, 2015 (held five days after she received the flu vaccine alleged as causal), her left shoulder pain, along with joint pain in her right knee and foot, was again noted under the "Review of Systems." Exhibit 6 at 117. Regarding her left shoulder pain, Petitioner indicated that "[s]he did go to a few PT sessions for her shoulder, but can't afford it anymore." *Id.* at 119. Although Petitioner later claimed that she reported a novel vaccine injury during this visit to someone she described as "the doctors [sic] helper" (presumably PA Hollobough), there is nothing in the medical record to support this claim. *Compare* Exhibit 12 at 2-3 *with* Exhibit 6 at 116-20.

A January 2016 visit with Petitioner's orthopedist, Dr. Myers, is described as a follow-up visit for left shoulder pain and makes no mention of the vaccination. Exhibit 3 at 10. At this time, Petitioner reiterated that she had ceased PT in March 2015 due to financial concerns. Myers diagnosed Petitioner with adhesive capsulitis and prescribed additional PT. *Id.*

The medical record from Petitioner's January 12, 2016 PT evaluation also associated Petitioner's adhesive capsulitis with her January 13, 2015 left shoulder bursitis – not the October 2015 vaccination. Exhibit 2 at 10. Additionally, onset was identified as having occurred 12 to 18 months prior, from July 2014 to January 2015, well before Petitioner received the flu vaccine. While the description of Petitioner's pain differs slightly from that previously reported, located in her triceps and scapula as opposed to her biceps and triceps, this small difference is not sufficient evidence of a new injury, certainly not one attributable to vaccination. *Id.*

Petitioner showed gradual improvement in her level of pain and limited ROM during 20 PT sessions from January through May 2016. Exhibit 2 at 9-26. She also underwent a manipulation under general anesthesia on March 4, 2016. Exhibit 3 at 14. By her discharge from PT, on May 13, 2016, Petitioner was described as still having some limited ROM, but her pain level had decreased to three out of ten. Exhibit 2 at 11. She was instructed to continue her home exercises. *Id.*

Petitioner did not seek treatment again for her left shoulder pain until 21 months later. On February 12, 2018, she visited a neurologist – now complaining (for the first time in the medical record) of left shoulder pain following the flu vaccine she received almost two and one-half years earlier. Exhibit 7 at 1. She specifically indicated she had been referred to the neurologist by an attorney she had seen. *Id.* And there also is no indication

in the medical record from this visit that Petitioner informed the neurologist of her pre-vaccination left shoulder/arm pain.

Petitioner underwent an EMG which was normal on February 28, 2018. Exhibit 7 at 16. It does not appear that she received further treatment, and Petitioner has not filed any updated medical records.

2.  Affidavits from Petitioner's Husband and Co-Workers

In their affidavits, Petitioner's husband and co-workers allege that Petitioner was in good health and had no issues performing her job as a cook with the Lake County Sheriff's department prior to receiving a flu vaccine on October 8, 2015. Exhibits 9-11. They claimed that thereafter she suffered left arm and shoulder pain which interfered with her ability to perform her job. *Id.* None mentioned the earlier pain Petitioner experienced prior to vaccination.

In an affidavit executed on November 17, 2018, co-worker Deborah S. Potter indicated that she worked with Petitioner for one and a half years, but did not specify the dates when this occurred. Exhibit 11. Thus, it is difficult to assess the probative value of the information she provided. Ms. Potter stated that she was aware of Petitioner's earlier issues with her knee but observed her having no prior difficulties performing her job. She then described the difficulties Petitioner experienced later. *Id.* Because Ms. Potter referenced events which spanned almost three years, I cannot ascertain which events she personally observed and what information was provided to her by another individual, most likely Petitioner.

Petitioner's other co-worker, Dawn Brown, indicated that she has worked with Petitioner since June 2014. Exhibit 10 at 1 (affidavit executed on November 14, 2018). She accompanied Petitioner to the Health Fair on October 8, 2015, when she received the flu vaccine alleged as causal. She recalled that Petitioner informed her that the shot was unusually painful, that she experienced pain later that day and the next, and that she would be seeing her PCP for her yearly physical on October 13, 2015.[7] *Id.* at 1-2.

Ms. Brown then described in detail the difficulties Petitioner experienced while at work, lifting pots and trays and loading them into the oven or placing them on upper shelves. Exhibit 10 at 2. But she does not identify the time frame when she observed this behavior. Specifically, she did not state whether the behavior occurred close in time to

---

[7] Because it is unlikely that Ms. Brown would have remembered that exact date, and since her affidavit does not explain the basis for this specificity, it is reasonable to assume that she refreshed her memory by speaking to Petitioner or her attorney.

the October 8, 2015 vaccination as a continuation of the two days of pain Petitioner had following vaccination or in early 2016, after Petitioner was diagnosed with adhesive capsulitis by Dr. Myers. According to the information contained in the medical records, Petitioner certainly would have encountered problems performing her job in early 2016 and later whether related, or not, to her October 2015 vaccination.

In his affidavit, executed on November 13, 2018, Petitioner's husband indicated Petitioner was "in good health"[8] prior to receiving the vaccine alleged as causal. Exhibit 9 at 1. He maintained that "shortly after she started to realize she was having trouble & pain in her left arm & shoulder, she got an appointment with Dr. Meyers [sic] who suggested he would put her to sleep & loosen her shoulder." *Id.* He also reported that when he posited a question to Dr. Myers regarding possible vaccine causation on the day Petitioner underwent manipulation, Dr. Myers responded that it was most likely that Petitioner's left shoulder condition was caused by the flu vaccine. He added that Dr. Myers refused to provide a letter stating that opinion. *Id.*

Even if assumed to be accurate, none of the information supplied in these affidavits contradicts the depiction of Petitioner's condition provided in her medical records - a left upper arm and shoulder condition that included pain and limited ROM, improved slightly with PT, and then progressed to adhesive capsulitis while Petitioner was unable to continue with her PT due to financial concerns. While Ms. Brown's affidavit provided evidence that Petitioner suffered immediate pain after receiving her October 8, 2015 flu vaccine, nothing in the affidavit establishes that this immediate, severe pain continued or that Petitioner's later difficulties were related to it, rather than her earlier and unresolved bursitis and limited ROM. Even Dr. Myers's statement, as related by Petitioner's husband given prior to her manipulation, without any detailed review of her medical records has little probative value. And Dr. Myers declined to provide an opinion regarding causation.

### 3. Letters from Petitioner's PCP and Physical Therapist

To support her claim of causation, Petitioner also produced three letters from her PCP, PA Hollobaugh, dated October 12, 2018, January 15, 2019, and June 27, 2019, respectively, and one letter from her physical therapist, dated May 27, 2020. Exhibit 6 at 176-78; Exhibit 13. All contain cursory statements opining the cause of Petitioner's later left shoulder pain was the vaccination she received in October 2015.

However, much of the information contained in these documents appears to be a recitation of statements made by Petitioner. For example, in her third letter, Petitioner's PCP indicated Petitioner "*states* she had a flu shot given on October 8[th] at her work and

---

[8] The affidavit from Petitioner's husband is handwritten by him using all capital letters. Exhibit 9. In this decision, any quote will not be capitalized.

subsequently developed increasing left shoulder pain within the next two days." Exhibit 6 at 178 (emphasis added). Additionally, in her first letter, Petitioner's PCP erroneously stated that Petitioner "ha[d] no history of shoulder pain." Exhibit 6 at 176. Clearly, the PCP did not have an accurate overview of Petitioner's medical history when she wrote this first letter.

Some of the other information provided is factually correct but does not provide the presumed support for causation. For example, the PCP's second letter stated that "a frozen shoulder . . . is different from bursitis." Exhibit 6 at 177. Based on this observation, she concluded that "[t]he two issues with [Petitioner's] shoulder are not related and are treated differently." *Id*. While it is true that bursitis and adhesive capsulitis are literally different conditions, adhesive capsulitis often occurs in the wake of a condition such as bursitis. It is thus not reasonable to summarily conclude that the conditions have to be unrelated.

In her May 27, 2020 letter, Petitioner's physical therapist provided more detail than her PCP. Exhibit 13. However, there are some inaccuracies in this letter as well. For example, the therapist indicated that Petitioner's earlier left shoulder pain had resolved in March 2015, an assertion not supported by the PT records from that time. *Compare id.* with Exhibit 2 at 8 (showing continued pain at a level of five out of ten). Additionally, the therapist does not address the entries in the contemporaneously-created PT records, which describe the onset of Petitioner's later pain and shoulder condition as the same as her earlier pain. *See, e.g.,* Exhibit 2 at 10 (placing the onset of Petitioner's pain in early 2016 in late 2014 or early 2015 and attributing it to her January 13, 2015 bursitis).

    4.  Petitioner's Affidavits

I have no doubt that Petitioner has an honest belief that her later pain was due to the flu vaccine she received, rather than a continuation of her earlier bursitis. However, she appears to have reached this conclusion several years after vaccination, as it is not reflected in the contemporaneous medical records.

A significant reason why contemporaneously-created medical records are given more weight is due to the unreliability of memory. *Vergara*, 2014 WL 2795491, at *4. Petitioner first connected her later pain to her flu vaccine more than two and one-half years after vaccination. Her more detailed affidavit in which Petitioner set forth most of her assertions was executed more than three and one-half years post-vaccination. Even an honestly held belief expressed that long after the event in question should not be given the same weight as information provided closer in time.

### B. Entitlement Determination

Because Petitioner had well-documented prior left arm and shoulder pain, along with limited ROM, her injury fails to meet the definition for a Table SIRVA. The second QAI criteria requires that a petitioner has "[n]o history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection." 42 C.F.R. § 100.3(c)(10)(i). The record does not permit me to conclude that this Table requirement can be satisfied.

Thus, to be entitled to compensation, Petitioner must provide preponderant evidence of actual causation, in satisfaction of the three-pronged test set forth in *Althen*. 418 F.3d at 1278. But here, Petitioner cannot satisfy the second *Althen* prong[9] - establishing a logical sequence of cause and effect showing that the vaccination was the reason for the injury. This is because the record does not permit me to conclude that her later pain and left shoulder adhesive capsulitis was unrelated to her earlier bursitis and limited ROM, while instead being attributable, even in part, to the flu vaccine she received on October 8, 2015. Petitioner has not provided preponderant proof to support her later allegations of vaccine causation or to counter the contradictory evidence found in the contemporaneously created medical records.

To support her later allegations, Petitioner relies mostly upon the cursory statements of her PCP, PA Hollobaugh, and her physical therapist and affidavits from herself, her husband, and her co-workers. But as discussed above, these are not sufficient to counter the information contained in the contemporaneously-created medical records, especially since the strongest evidence of an ongoing left shoulder condition is contained in the medical records from these two medical providers. While the opinions of treating physicians are generally afforded substantial weight, this rule primarily applies to the diagnoses and opinions provided closer-in-time to the injury and treatment. *Banks v. Sec'y of Health & Human Servs.*, No. 02-0738V, 2007 WL 2296047, at *22 (Fed. Cl. Spec. Mstr. July 20, 2007) (citing *Capizzano v. Sec'y of Health & Human Servs.*, 440 F.3d 1317, 1326 (Fed. Cir. 2006). In this case, the opinions either come from fairly long after, or differ from what is reflected in the medical records, and these providers make no attempt to address these differences.

### IV. Conclusion

To date, and despite ample opportunity, Petitioner has failed to file evidence to address numerous deficiencies noted in her case. She has failed to provide preponderant

---
[9] Because all three *Althen* prongs must be satisfied, Petitioner's claim fails simply for not being able to meet one of them.

evidence showing that she suffered a new left shoulder injury caused by the flu vaccine she received on October 8, 2015, as alleged.

Petitioner was informed that failure to file sufficient evidence, such as an expert report, to support her claim would be treated as either a failure to prosecute this claim or as an inability to provide supporting documentation for this claim. Accordingly, this case is DISMISSED. The clerk shall enter judgment accordingly.[10]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[10] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.